# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | 8:12CR124 |
| vs. | | |
| CORY BECKSTROM, | | FINDINGS AND RECOMMENDATION |
| Defendant. | | |

This matter is before the court on the Motion to Suppress (Filing No. 39) filed by defendant Cory Beckstrom (Beckstrom).  Beckstrom is charged in the Indictment with conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine (Count I) in violation of 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1).  **See** Filing No. 1.  Beckstrom is also charged in the Indictment with two instances, on March 7, 2012, and March 29, 2012, of intentional distribution of 5 grams or more of methamphetamine (Counts II and III) in violation of 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1).  ***Id.***  The Indictment alleges a Forfeiture Allegation under 21 U.S.C. § 853 relating to $999 and $1920 in United States currency.  ***Id.***  Beckstrom seeks to suppress evidence seized from his person and vehicle and all statements obtained by officers of the Omaha Police Department (OPD) on March 7, 2012, and March 29, 2012.

The court held a hearing on the motion on January 8, 2013.  Beckstrom was present with his counsel, Edward L. Wintroub.  The United States was represented by Special Assistant U.S. Attorney Martin J. Conboy, IV.  The court heard the testimony of OPD Sergeant Mark Noonan (Sergeant Noonan), OPD Officer James Holtmeyer (Officer Holtmeyer), and the defendant Cory Beckstrom.  A transcript (TR.) of the hearing was filed on January 16, 2013.  **See** Filing No. 63.  Although Beckstrom sought and received permission to file a post-hearing brief, none was filed.  **See** Filing No. 71.

## FINDINGS OF FACT

### A.   March 7, 2012

On March 7, 2012, Sergeant Noonan, a member of the OPD Narcotics Unit, was conducting a narcotics investigation (TR. 3).   Sergeant Noonan used a cooperating witness (CW) to arrange a purchase of a quarter ounce of methamphetamine (TR. 3). The CW made several calls to a man identified as Shamus O'Doherty (O'Doherty) (TR. 3, 4).   The CW arranged to purchase a quarter ounce of methamphetamine from O'Doherty in the area of 14th and William Streets at approximately 9:30 p.m. on March 7, 2012 (TR. 4, 6).

Sergeant Noonan proceeded to the area, parking approximately two to three car lengths north of William Street on 14th Street (TR. 4).   The CW received a call from O'Doherty stating that O'Doherty had arrived at the location in a silver Ford Focus (TR. 4-5).   Sergeant Noonan observed a silver Ford Focus as it arrived and parked on the east side of 14th Street, just north of William Street (TR. 5).   Sergeant Noonan and his partner, Officer Phenis, approached the passenger side of the Ford Focus and recognized O'Doherty as the passenger (TR. 5).

Sergeant Noonan told O'Doherty to exit the vehicle and asked O'Doherty whether he had anything illegal on him (TR. 5).   O'Doherty said he had a knife and syringes (TR. 5).   Sergeant Noonan asked for and was given permission to search O'Doherty's person (TR. 5-6).   Sergeant Noonan found a knife, syringe, digital scale, and four small baggies on O'Doherty (TR. 6).   The baggies appeared to contain methamphetamine residue (TR. 6).

With O'Doherty in the vehicle were a driver and a back seat passenger (TR. 6). Sergeant Noonan identified the driver as Beckstrom (TR. 6).   Sergeant Noonan removed Beckstrom and the back seat passenger from the vehicle then searched the vehicle (TR. 6).   Sergeant Noonan found approximately a quarter ounce of methamphetamine under O'Doherty's seat and a black bag on the console between Beckstrom's seat and O'Doherty's seat (TR. 6).   The black bag contained five bags of methamphetamine, a scale, and money (TR. 6-7).   Beckstrom was placed under arrest following the search of the vehicle (TR. 7).

2

**B.      March 29, 2012**

On March 29, 2012, Officer Holtmeyer and his partner, Office James Haley (Officer Haley) conducted surveillance on a residence at 34th and Sheffield Streets (TR. 24, 33).   The OPD Narcotics Unit had informed Officer Holtmeyer of possible narcotics dealing at the residence (TR. 33). Officers Holtmeyer and Haley were located approximately one block east of 34th and Sheffield Streets on Sheffield Street (TR. 24). At approximately 10:00 p.m., Officer Holtmeyer observed a red Ford Mustang with Nebraska plates leaving the driveway of the residence (TR. 24).   The conditions were dark and clear (TR. 25).   Officer Holtmeyer was located approximately one block from the Ford Mustang when it left the driveway (TR. 31).   Officer Holtmeyer observed the Ford Mustang turn west on Sheffield Street without working taillights or visible headlights (TR. 24).   Officer Holtmeyer drove west on Sheffield Street to follow the Ford Mustang (TR. 24).   When Officer Holtmeyer closed within approximately one car length, the Ford Mustang turned left onto 34th Street without signaling (TR. 25).   Subsequently, Officer Holtmeyer activated red and blue lights to effectuate a traffic stop of the vehicle (TR. 25)

The driver abruptly stopped the Ford Mustang on 34th Street, exited the vehicle, and immediately walked toward a residence (TR. 25).   Officer Holtmeyer ordered the driver, later identified as Beckstrom, to return to the vehicle and sit in the driver's seat (TR. 25-27).   Beckstrom slowly returned to the vehicle but did not sit back in the driver's seat (TR. 25-26).   When Officer Holtmeyer approached the vehicle and asked for identification, Beckstrom lunged at and pushed Officer Holtmeyer and attempted to run northbound (TR. 26).   Officer Holtmeyer tackled Beckstrom and struggled with him for approximately 15 to 30 seconds (TR. 26, 41).   Officer Holtmeyer yelled for Beckstrom to stop resisting and to put Beckstrom's hands behind his back (TR. 26).   During the struggle, Beckstrom reached toward his waist with his left hand (TR. 26).   Officer Holtmeyer disengaged and drew his gun (TR. 26, 36).   Officer Holtmeyer observed Beckstrom throw a small, black, zippered pouch under the Ford Mustang (TR. 26). While Beckstrom threw the pouch under the Ford Mustang, Officer Holtmeyer was yelling at Beckstrom to stop resisting and put his hands behind his back (TR. 26). Officer Holtmeyer subsequently overpowered and detained Beckstrom (TR. 27).

3

After Officer Holtmeyer detained Beckstrom, Officer Holtmeyer recovered the black pouch from under the Ford Mustang (TR. 27).  Officer Holtmeyer opened the pouch and discovered drug paraphernalia and narcotics, including approximately 1.32 ounces of methamphetamine (TR. 27).  Officer Holtmeyer searched Beckstrom and found a digital scale with methamphetamine residue, a pipe with methamphetamine residue, and a wallet containing identification and $1920 in cash (TR. 27-28).

**LEGAL ANALYSIS**

Beckstrom argues evidence found in the vehicle and on his person should be suppressed because (1) no probable cause existed for his arrest at the times officers approached him and (2) no probable cause or other legal justification existed for the warrantless, non-consensual vehicle search.  **See** Filing No. 39 - Motion p. 2-4, Beckstrom argues any consent he gave to the March 7, 2012, vehicle search was coerced or, alternatively, the search exceeded the scope of the consent given.  **Id.** at 5.

**A.  March 7th Incident**

    **1.  Initial Contact**

Beckstrom argues the officers did not have reasonable suspicion or probable cause to approach him as he sat parked in a vehicle on 14th Street, therefore the contact was unconstitutional.  **See** Filing No. 39 - Motion p. 4.

"Determining which police-citizen contacts fall within the protections of the Fourth Amendment and which do not is fact intensive and turns on the unique facts of each case."  **United States v. Griffith**, 533 F.3d 979, 983 (8th Cir. 2008).  When evaluating "each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" the court "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  **United States v. Arvizu**, 534 U.S. 266, 273-74 (2002) (**quoting United States v. Cortez**, 449 U.S. 411, 417-18 (1981)); **see also United States v. Stewart**, 631 F.3d 453, 457 (8th Cir. 2011).  The government has the burden to prove justification existed

for any restraint on the defendant. **See *Missouri v. Seibert***, 542 U.S. 600, 608 n.1 (2004); ***United States v. Escobar***, 389 F.3d 781, 785 (8th Cir. 2004).

One type of encounter between the police and a citizen is an investigative detention, which is a seizure of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity. **See, e.g., *United States v. Sokolow***, 490 U.S. 1 (1989); ***United States v. Green***, 691 F.3d 960, 963 (8th Cir. 2012). "An officer is allowed to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." ***United States v. Saenz***, 474 F.3d at 1136 (*citing Terry*, 392 U.S. at 30). "Any detention consequent to an investigative stop must be temporary and must last no longer than necessary." ***United States v. Dickson***, 58 F.3d 1258, 1263 (8th Cir. 1995). "In deciding whether a detention lasts too long to be justified in an investigative stop, and therefore becomes an arrest, we consider whether the police 'diligently pursued' a means of investigation likely to resolve their suspicions quickly." ***Id.*** (***quoting United States v. Sharpe***, 470 U.S. 675, 686 (1985)). "Generally, the police may take reasonably necessary steps to 'maintain the status quo of a situation while verifying or dispelling suspicion.'" ***Id.*** (***quoting United States v. Seelye***, 815 F.2d 48, 50 (8th Cir. 1987)).

"In making reasonable-suspicion determinations, reviewing courts must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." ***United States v. Martinez-Cortes***, 566 F.3d 767, 769 (8th Cir. 2009) (internal quotation and citation omitted). "Reasonable suspicion must be supported by 'specific and articulable facts.'" ***United States v. Hughes***, 517 F.3d 1013, 1016 (8th Cir. 2008) (*citing Terry*, 392 U.S. at 21). "Though each factor giving rise to suspicion might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed in its totality." ***United States v. Morgan***, 270 F.3d 625, 631 (8th Cir. 2001); **see *also United States v. Gannon***, 531 F.3d 657, 661 (8th Cir. 2008). Information from confidential informants and surveillance related to controlled buys, even tangentially related to a suspect, may justify an investigatory stop. **See *United States v. Briley***,

319 F.3d at 364 (8th Cir. 2003) (finding probable cause for investigatory stop where confidential informant supplied information of suspect's drug distribution); *United States v. Hughes*, 15 F.3d 798, 801-02 (8th Cir. 1994) (concluding a prior controlled buy, confidential informant's identification of suspect's vehicle, and confidential informant's statement that suspect possessed crack cocaine justified investigatory stop of suspect's vehicle).

Sergeant Noonan testified he suspected the silver Ford Focus was involved with the controlled buy arranged between the CW and O'Doherty because: (1) O'Doherty arranged to deliver methamphetamine, (2) O'Doherty gave the CW a specific address and time, (3) O'Doherty relayed to the CW that O'Doherty was at 14th and William Streets and waiting for the CW in a silver Ford Focus, and (4) while information was being relayed to the CW and officers, Noonan observed a silver Ford Focus park on 14th Street just north of William Street. This was not just an "inarticulable hunch" as the defendant suggests. The officers received information O'Doherty was present at a location and were able to confirm the silver Ford Focus' arrival at that specific location. Based on the totality of the circumstances, the court finds a reasonable articulable suspicion existed to approach and make contact with the occupants of the silver Ford Focus, including Beckstrom.

### 2. Vehicle Search

Beckstrom argues that after removing him from the vehicle on March 7, 2012, officers did not have probable cause to search the vehicle, therefore the search was unconstitutional. **See** Filing No. 39 - Motion p. 2.

Under the automobile exception, if a law-enforcement officer has probable cause, he may search an automobile without a warrant. *United States v. Kennedy*, 427 F.3d 1136, 1140-41 (8th Cir. 2005). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mayo*, 627 F.3d 709, 713 (8th Cir. 2010) (internal quotation omitted). "The historical reliability of the confidential informant, his provision of descriptive information not easily discoverable, and the independent corroboration of his information by investigating

officers together establish probable cause." **United States v. Marchena–Borjas**, 209 F.3d 698, 700 (8th Cir. 2000). "[W]here a previously unknown informant provides information, the informant's lack of a track record requires 'some independent verification' to establish the reliability of the information." **United States v. Brown**, 49 F.3d 1346, 1349 (8th Cir. 1995) (**citing *United States v. Robertson***, 39 F.3d 891, 893 (8th Cir. 1994)). "Corroboration is especially valuable in establishing the reliability of an informant's tip when predictive elements of the tip are corroborated." **Brown**, 49 F.3d at 1349. "[T]he fact that [the CW's information] proved correct in certain aspects of his prediction (the innocent behavior) increases the probability that other aspects of his prediction (the criminal behavior) are also correct." **Id.**

Here, the OPD arranged a controlled buy using a previously unknown cooperating witness. However, Sergeant Noonan corroborated multiple predictive elements of the CW's information. Specifically, the CW predicted 1) the time and place of the meeting, 2) the make, model, and color of the vehicle, and 3) that O'Doherty would be in the vehicle. Sergeant Noonan's independent, firsthand corroboration of the CW's information establishes the CW's reliability despite the fact that the CW was a previously unknown informant. The CW's accuracy in predicting O'Doherty's presence at a time and place in a specific vehicle made the CW's predictions regarding criminal conduct more reliable. Additionally, Sergeant Noonan searched O'Doherty and discovered narcotics and drug paraphernalia on O'Doherty. The officers had probable cause to search the vehicle based on the totality of the circumstances. Therefore, the vehicle search was constitutional.

## B. March 29th Incident

Beckstrom asserts Officer Holtmeyer had insufficient probable cause to effectuate a stop of the Ford Mustang. **See** Filing No. 39 - Motion p. 4. Beckstrom testified that when Officer Holtmeyer initially observed Beckstrom driving the red Mustang, the headlights and taillights of the red Mustang were on (TR. 46). Beckstrom testified he used his turn signal when he turned left onto 34th Street from Sheffield Street (TR. 47).

To some extent a credibility determination is necessary for determination of the legal issues in this matter.   The court finds Officer Holtmeyer more credible than Beckstrom.  This determination is made based upon each of the witnesses' demeanor during the hearing, intelligence, memory, motives, general reasonableness, and consistency with other testimony.   Based on this credibility determination, the court discredits Beckstrom's testimony in its entirety.

The Eighth Circuit has "repeatedly held that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003) (internal quotation and citations omitted).  "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001).  "An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing that the driver has breached a traffic law." *Mallari*, 334 F.3d at 766 (*citing United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) and *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (finding officer's mistaken, but objectively reasonable belief that a traffic violation occurred supported traffic stop)). An officer's subjective motivations do not affect the reasonableness of a traffic stop based on the violation of the traffic laws. *United States v. Long*, 532 F.3d at 795 (8th Cir. 2008); *United States v. Chatman*, 119 F.3d 1335, 1340 (8th Cir. 1997) ("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.") (internal quotation omitted).

The court finds Officer Holtmeyer had an objectively reasonable basis for believing Beckstrom had broken two traffic laws.  First, Officer Holtmeyer observed Beckstrom operating the red Mustang without taillights at night in violation of the Nebraska rules of the road requiring a vehicle to display taillights during the period from sunset to sunrise.  **See** Neb. Rev. Stat. § 60-6,219(1).  Second, Officer Holtmeyer observed Beckstrom making a left turn without using a signal in violation of the Nebraska rules of the road requiring all persons turning on a roadway to give an appropriate signal.  **See** Neb. Rev. Stat. § 60-6,161.  Based on observing two traffic violations, Officer Holtmeyer had probable cause to stop the red Mustang.

After Officer Holtmeyer stopped and approached Beckstrom, Beckstrom lunged at and pushed Officer Holtmeyer.  Beckstrom's actions provided Officer Holtmeyer probable cause to detain and search Beckstrom.  **See** ***United States v. Marrero***, 152 F.3d 1030, 1034 (8th Cir. 1998) (holding the officer had probable cause to arrest the defendant for assaulting a police officer after the defendant began struggling with the officer); **see also** ***United States v. Brown***, 169 F.3d 89, 92 (1st Cir. 1999) (holding the officer had probable cause to arrest suspect for assault and battery on a police officer after the suspect pushed the officer).  Further, during Officer Holtmeyer's attempt to restrain Beckstrom, Beckstrom threw a black pouch under the red Mustang.  Beckstrom abandoned this property and any expectation of privacy when he threw away the pouch.  **See** ***United States v. Taylor***, 462 F.3d 1023, 1026 (8th Cir. 2006) (holding property abandoned when thrown away by suspect during pursuit); **see also** ***United States v. Benson***, 686 F.3d 498, 502 n.1 (8th Cir. 2012) ("A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment.") (**quoting** ***United States v. Tugwell***, 125 F.3d 600, 602 (8th Cir. 1997)).  Beckstrom's detention and the search of the abandoned pouch were constitutional.

## C.   Consent

In Beckstrom's conclusion, he argues any consent he gave to the March 7, 2012, vehicle search was coerced or, alternatively, the search exceeded the scope of the consent given.  **See** Filing No. 39 - Motion p. 5.  No testimony regarding consent was offered at the hearing.  The court finds the March 7, 2012, vehicle search was supported by probable cause.  Consequently, whether Beckstrom gave consent or not, his claim the search exceeded the scope of any consent is moot.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that**:

Cory Beckstrom's Motion to Suppress (Filing No. 39) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Findings and Recommendation.   Failure to timely object may constitute a waiver of any objection.   The brief in support of any objection shall be filed at the time of filing such objection.   Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 18th day of March, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge